MARY McCARTHY, Appellant, v. GEORGE S. CUTCHALL, Appellee.

No. 39614.

194

Jᴜɴᴇ 24, 1929.

Rᴇʜᴇᴀʀɪɴɢ Dᴇɴɪᴇᴅ Nᴏᴠᴇᴍʙᴇʀ 22, 1929.

*Tinley & Tinley* and *Robertson & Robertson,* for appellant.

*Preston & Dillinger,* for appellee.

Fᴀᴠɪʟʟᴇ, J.—The appellee was the owner of a farm in Pottawattamie County. In the spring of 1920, he sold said farm to Michael McCarthy. Said Michael is the brother of the appellant. A part of the purchase price of said farm was represented by a mortgage on said premises, given by Michael to the appellee. Default was made in the payment of interest on said mortgage, and foreclosure action was commenced on September 15, 1923. On or about October 9, 1923, Michael executed to the appellee a chattel mortgage upon all crops grown on said mortgaged premises during the year 1924, and the foreclosure proceedings were continued. On September 23, 1924, Michael gave to the appellant a chattel mortgage upon the crops raised upon said premises during the year 1924. Said mortgage was made subject to appellee's chattel mortgage on said crops. On or about October 9, 1924, Michael and the appellee entered into a written stipulation regarding the harvesting of the corn on said premises and applying the proceeds on the said mortgage indebtedness on

or before March 1, 1925. The stipulation provided that, upon the failure of Michael to make the payments provided for on March 2, 1925, he would then reconvey said mortgaged premises to the appellee, and the appellee would cancel and surrender to Michael the obligations which he held against him. The stipulation also provided that, on the failure of Michael to make said payments, appellee should have a right to have a receiver appointed for said premises. Michael harvested the corn and stored the same upon the premises, there being approximately 5,000 bushels. Michael having failed in his payments, on March 2, 1925, appellee filed an application for the appointment of a receiver in the foreclosure proceedings, also asking foreclosure of his chattel mortgage on the corn; and on the said 2d day of March, the court appointed a receiver, and by order directed said receiver to take charge of the mortgaged premises and ''collect the rents and profits therefrom, including the crop of corn now located thereon.'' The receiver filed his bond, which was approved, and took possession of the said farm and the corn on the place. The evidence tends to show that this was all done on March 2, 1925. Within a day or two thereafter, the receiver appointed the appellee as custodian of said premises and the said corn thereon, and requested the appellee to take charge of and look after the same for and in behalf of said receiver.

On or about March 5, 1925, an adjustment of the matters between Michael and the appellee was made by the attorneys representing the respective parties, and a deed, duly executed by Michael to the said premises, was delivered to the attorneys for the appellee, who in turn delivered to the attorney for Michael the notes and mortgages held by the appellee against Michael, the same being marked ''canceled.'' On or about March 6, 1925, the appellant went to the said premises with her employees, for the purpose of removing the corn. The appellee, who was then on the place, informed them that he was custodian of the corn for the receiver; that it was in the possession of the receiver, and could not be removed from the place. Thereupon the receiver was called by telephone, and arrived at the place within about ten minutes; and he then told the appellant and her employees that the property was in his charge as receiver, and that they could not remove any of it, and that the appellee was custodian of the property for him. Thereupon the appellant and her em-

ployees left the premises, and made no further attempt to secure possession of the corn. Thereafter the receiver leased the premises to a third party for the year 1925. In May, 1925, the appellee filed application in said receivership matter for an order, claiming that the chattel mortgage which he held upon said corn had been inadvertently surrendered by his attorneys at the settlement that was made between counsel in March preceding, and asking to have it turned over to him. Appellant and other claimants were parties to said proceedings. A hearing was had in August, 1925, and the court entered an order holding that the indebtedness of Michael to the appellee had been extinguished by the deed referred to, and that the appellee had no interest in said corn in controversy. Thereafter the appellee asserted no further claim of any kind to said corn. Other parties, however, claimed an interest in said corn, and a portion of same was sold, under agreement of said interested parties. On August 30, 1925, about one half of the corn which remained on said premises was destroyed by fire. Subsequently the receiver sold the balance of the corn, and made report of the proceeds thereof; and on December 31, 1926, the receiver was discharged.

I. It is contended by the appellant that the record does not show that the receiver duly qualified as such officer. We think the record satisfactorily shows that the receiver did qualify, as provided by law, and was legally entitled, under the order of the court, to take possession of the corn in question on March 2, 1925.

II. Appellant's main contention is that, by reason of the settlement made in the pending litigation on March 5, 1925, the appellee had no interest whatever in the corn in question after said settlement was effectuated, and therefore was guilty of conversion in denying the appellant the right to remove said corn from the premises on March 6, 1925. We think it may be conceded that the settlement made by the attorneys for the respective parties on March 5, 1925, was binding upon the appellee from the time it was entered into by said attorneys and delivery of the papers was made. But in this connection, it is important to note that, while such settlement had been effectuated, the pending action of foreclosure had not been dismissed, nor had the receiver been discharged. The receiver was an officer of the court. It is the general rule that property in the possession of a receiver is *in custodia legis*. *Home Sav. & Tr. Co. v. District*

*Court of Polk County*, 121 Iowa 1; *State Cent. Sav. Bank v. Fanning Ball-Bearing Chain Co.*, 118 Iowa 698; *First Nat. Bank v. White Ash Coal Co.*, 188 Iowa 1227. As we have seen, the corn in question legally came into the possession of the receiver and was still in his custody as such receiver on the 6th day of March, 1925, when the appellant came upon the premises in question and sought to remove the same. At that time, the appellee was acting as custodian of said property for and in behalf of the said receiver, and at his instance and direction. The appellee explained to the appellant and her employees that the said corn had been placed in the hands of the receiver, and that it could not be removed without the receiver's consent. There is a claim in behalf of the appellant that at said time the appellee also stated that he claimed to own the corn, or had a right thereto. It is, however, true that appellee objected to the appellant's removing the corn for the express reason that it was still within the custody of the receiver, and that it could not be removed without the consent of the receiver. It was the appellee who immediately telephoned for the receiver to come to the premises, and after his arrival, the receiver himself refused to allow the appellant and her employees to remove the corn from the premises. We think it cannot be questioned that, under well established rules, the corn was still *in custodia legis* on March 6, 1925, notwithstanding the fact that settlement of the questions involved in the pending foreclosure action had been made between the parties thereto. Such settlement out of court did not legally discharge the receiver, or release *ipso facto* his right to the possession of the premises. Acting as an officer of the court, he had been specifically directed to take charge of the corn in question. It was his duty to retain it in his possession until ordered by the court to make disposition thereof. This he did. The appellee was acting as an agent for the receiver at the time in question, and it was his duty, while acting in such capacity, to retain the possession of the corn. The fact that it was subsequently ascertained, upon a hearing, that the appellee did not have a lien on the corn from and after the settlement of March 5, 1925, did not operate to discharge the corn from the custody of the receiver, nor did it render the appellee individually liable for conversion on March 6, 1925, because he retained the custody of the corn while acting as agent for the receiver, against the

demand of the appellant for possession thereof. Although it is true that the appellant herein was not a party to the foreclosure proceedings in which the receiver was appointed, the appointment of the receiver and his taking possession of the corn did not constitute an illegal act.

The appellee did have a lien on the corn superior to that of the appellant at the time the foreclosure proceedings were instituted and the receiver was appointed. The receiver was  properly appointed, and legally entitled to possession of the corn. The receiver was not a trespasser at the time he took possession of the corn. He did not become a trespasser the moment the parties made a settlement of the matters involved in the pending litigation. He still had not only a legal right, but a duty, as receiver, to retain possession of the property in his charge for such necessary and reasonable time as might be required to present the situation to the court and receive orders. As an officer of the court, he could not abandon the property without a report to the court or an order in the premises, merely upon information that the parties to the litigation had settled their differences. Likewise, the appellee, acting as agent of the receiver and as custodian of the corn, was not a trespasser in retaining the possession of the corn for the receiver at the time. The taking of possession of the corn by the receiver was not unlawful, and its retention by the receiver at the time of appellant's demand was not unlawful. Therefore it follows that there was no conversion of the corn by the receiver or the appellee on March 6, 1925, when demand was made for it by appellant. *Sperry, Watt & Garver v. Ethridge*, 70 Iowa 27, is clearly distinguishable. In that action, a deputy United States marshal seized goods on an attachment issued from the United States court. We said:

"It is said that, as the defendant seized the goods in his official capacity, under process which issued out of the circuit court of the United States, and he holds the goods subject to the order of said court, that is a bar to this action. The process under which the defendant was acting directed him to attach the property of Charles Douglass and George W. Hamilton. Such process did not authorize him to attach the property of anyone

else. He therefore was not justified in seizing the property of the plaintiff."

We do not have any such situation in the case at bar.

We are of the opinion that the appellant failed to establish a cause of action against the appellee for conversion of the corn in question, and that the trial court did not err in dismissing the plaintiff's petition.

The judgment is—*Affirmed*.

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.